**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KRISTAN D. NELSON,

                **Plaintiff**

       v.                                               Case No. 1:11-cv–335-HJW

**CLERMONT COUNTY VETERANS'
SERVICE COMMISSION, et al.,**

                **Defendants**

## ORDER

In this employment discrimination action, plaintiff Kristan Nelson has sued two defendants: the Clermont County, Ohio, Veteran Services Commission ("VSC"), and the Clermont County, Ohio, Board of Commissioners ("Board"). The VSC has filed an answer. The Board has filed a "Motion to Dismiss" (doc. no. 13), contending that as a matter of law, it is <u>not</u> the plaintiff's employer and therefore must be dismissed from this action. Plaintiff opposes the motion. Having fully considered the pleadings and the parties' briefs, the Court will <u>grant</u> the motion for the following reasons:

## I. Factual Allegations and Procedural History

In her amended complaint, plaintiff indicates that she was hired by the VSC in Clermont County, Ohio, as an administrative assistant in 2002 (doc. no. 6, ¶ 5). In January of 2007, Danny Bare became her new supervisor (¶ 7). In December of 2008, he gave her an overall performance rating of "Very Good." In August of 2009, Ms. Nelson discovered that her 13-year-old daughter had been sexually assaulted by unknown assailants several months earlier in June of 2009. Plaintiff alleges that she

and her daughter both developed extreme anxiety, depression, and posttraumatic stress disorder ("PTSD") (¶ 8). Plaintiff requested, and was granted, five weeks of FMLA leave from September 29, 2009 through November 8, 2009 "to care for her daughter during her mental health crisis" (¶¶ 8- 9). Plaintiff alleges in her amended complaint that she also took this leave "to cope with her own serious health condition" (¶ 9).[1]

When plaintiff returned to work on November 9, 2009, she alleges that Mr. Bare summoned her to his office and, in the presence of Mark Coyle, a Senior Veteran Service officer, asked her to provide him with a breakdown of her workflow, including the specific amount of time she spent on each of her job duties on a daily, monthly, and annual basis (¶ 12). The same day, they also discussed some overtime hours she claimed to have worked several months earlier, but not reported (¶ 13). According to plaintiff, Mr. Bare insisted that she submit an amended time report for these hours. Plaintiff submitted claims for overtime and received payment for it.

Plaintiff alleges that it was "necessary" on occasion for her daughter to accompany her to work, due to the daughter's PTSD (¶ 11). Plaintiff indicates that on November 13, 2009, Mr. Bare informed her that it was not appropriate for her teenage daughter to be present in the workplace (¶ 14) and that she "must choose between caring for her daughter or keeping her job" by November 18, 2009 (¶ 15). Plaintiff met

---

[1] Plaintiff's FMLA certification says nothing about her own alleged "serious health condition." It indicates that plaintiff requested FMLA leave "to provide emotional support" and "to drive her daughter to and from doctor appointments" (doc. no. 19-9 at 1, 5). In the medical provider section, both providers refer only to the daughter's treatment for a back injury and counseling.

with Elizabeth Mason, Asst. Prosecuting Attorney for Clermont County, on November 16, 2009, to inquire about filing a grievance (¶ 17). Plaintiff indicates that Ms. Mason informed Mr. Bare by telephone that plaintiff was considering filing a grievance against him (¶ 18). Plaintiff alleges that when she returned to the office, Mr. Bare was angry, told her he had lost all confidence in her, and criticized her work (¶¶ 19-21). Two days later, on November 18, 2009, plaintiff proposed to Mr. Bare that she work a 35-hour work week schedule, with no lunch time and the work day ending at 2:30 p.m. (¶ 22). She alleges that Mr. Bare did not respond to this proposal, and instead, advised her that she could either resign or be fired, because her "declining performance to undermine me (sic)" (¶ 23).[2]

On November 20, 2009, plaintiff received a letter informing her that a pre-disciplinary hearing was scheduled on November 24, 2009 for charges against her (¶¶ 24-25). Except for a reference to unauthorized overtime, plaintiff's complaint does not identify the charges. Plaintiff acknowledges that she presented no evidence at this hearing, but contends that the letter setting forth the charges was "vague" (¶ 26). She submitted a written rebuttal after the hearing (¶ 27). Hearing Officer Sgt. Michael McConnell of the Clermont County Sheriff's Department subsequently determined that the VSC had substantiated the charges against plaintiff (¶ 28). Plaintiff complains that the officer "ignored" her rebuttal letter (¶ 29) and alleges that the prosecutor (Ms. Mason) threatened to indict her for submitting the claims for

---

[2]Plaintiff has apparently omitted a word or words from this sentence in the amended complaint, but its meaning is still discernible.

unauthorized overtime (¶ 30). Plaintiff contends that she was threatened with prosecution to "deter" her from pursuing claims and to "retaliate against" her for pursuing claims (¶ 30).

On May 14, 2010, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") (¶ 31). In that charge, she named only the VSC as her employer and indicated she was complaining of alleged discrimination based on "disability" (doc. no. 13, attached charge). Plaintiff received a "Right to Sue" letter dated April 7, 2011.

On May 20, 2011, plaintiff timely filed a six-count federal complaint, alleging violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq., and Ohio R.C. §§ 4112.01(A) and (I). She also alleged intentional infliction of emotional distress under Ohio common law. Plaintiff named a single defendant – the VSC – as her employer.

Plaintiff then amended her complaint to add a second defendant (the "Board") as "employer"(doc. no. 6). Plaintiff includes the conclusory allegation that even though she did not name Clermont County as her employer in her EEOC charge, the charge "effectively included Clermont County as a respondent"(¶ 31).[3] In turn, the

---

[3]**Generally, a party not named in an EEOC charge cannot be sued in a subsequent civil action for employment discrimination. This requirement is designed to provide notice to the charged party and to facilitate the EEOC's efforts to obtain voluntary reconciliation of complaints. Courts have dismissed suits on the ground that the specific defendants were not named in the original charge. See, e.g., <u>E.E.O.C. v. General Motors Corp</u>., 1973 WL 323 (N.D. Ohio 1973).**

newly-added defendant Board filed a motion to dismiss pursuant to Rule 12(b)(6), asserting that the VSC, not the Board, is the plaintiff's employer, and that, as a matter of Ohio law, the VSC is responsible for supervising, hiring, and firing its own employees. The Board indicates it has no such authority over VSC employees and thus requests the Court to dismiss the plaintiff's claims against it (doc. no. 13 at 11).

## II. Issues Presented

The main issue before the Court is whether the VSC, not the Board, was the plaintiff's "employer" for purposes of the ADA, FMLA, and Ohio law. The Court will consider whether all the claims against the Board should be dismissed pursuant to Rule 12(b)(6).

## III. Relevant Law

The ADA requires a "covered entity" to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. §§ 12111, 12112. The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." Id.[4]

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful

---

[4]The Board suggests that plaintiff may have added the Board as a named defendant in an attempt to meet the numerosity requirement for covered employers under the ADA (doc. no. 21 at 3 "Plaintiff needs an employer with fifteen or more employees to keep her claims in federal court. . . her former employer [the VSC] has only eleven").

by this subchapter." 29 U.S.C. § 2615. The term "employer" expressly includes "any public agency, as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii). Section x defines the term "public agency" to include "any agency of . . . a political subdivision of a State." 29 U.S.C. § 203(x). The FMLA regulations explain that "[p]ublic agencies are covered employers without regard to the number of employees employed." 29 C.F.R. § 825.104(a); 29 C.F.R. § 825.104(d). "Normally, the legal entity which employs the employee is the employer under the FMLA." 29 C.F.R. § 825.104(c).[5]

For purposes of the Ohio Civil Rights Act, the term "employer" is defined to include "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Rev.Code Ann. § 4112.01(A)(2).

## IV. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[5]The Board appropriately did not seek dismissal under Rule 12(b)(1) for lack of jurisdiction, as the FMLA's definitions of "employer" and "eligible employee" are not considered "jurisdictional." Cobb v. Contract Transport, Inc., 452 F.3d 543, 548 (6th Cir. 2006)(citing Arbaugh v. Y & H Corp., 546 U.S. 500, 510-511 (2006)); see also, e.g., Taborac v. NiSource, Inc., 2011 WL 5025214, *2 (S.D.Ohio).

that the defendant is liable for the misconduct alleged." Id. To survive a motion to dismiss, more is required than "unadorned, the-defendant-unlawfully-harmed me accusations." Id. "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic, 550 U.S. at 555. A plaintiff must provide the grounds for entitlement to relief "rather than a blanket assertion of entitlement to relief." Id. at fn.3.

**V. Discussion**

First, plaintiff significantly misstates the applicable standard for Rule 12(b)(6) by asserting that "the Court may sustain Clermont County's motion only if it appears beyond a reasonable doubt that Ms. Nelson can prove no set of facts in support of her claims" (doc. no. 19 at 4). Plaintiff cites a case from 1988 which cites language from Conley v. Gibson, 355 U.S. 41 (1957), which is no longer good law on this point. In Bell Atlantic, the United States Supreme Court specifically rejected this language and observed:

> "[T]here is no need to pile up further citations to show that Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. . . . this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

Id. at 563. The United States Supreme Court emphasized that to state a plausible claim, a plaintiff's complaint must provide adequate factual "grounds" upon which

the claim rests. Id.

In the present case, the plaintiff's allegation in her amended complaint that both defendants were her "employer" within the definitions of the ADA and FMLA is essentially conclusory (doc. no. 6 at 33, 41, 45). As the United States Supreme Court has explained, legal conclusions "must be supported by factual allegations" in the complaint that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949–50. To be liable under the ADA and FMLA, the defendant must be a covered employer that employed the plaintiff.

Plaintiff provides a few factual "grounds" in her amended complaint in an effort to give plausibility to her assertion that the Board was her employer. For example, she alleges that "[e]mployees of the VSC are treated as employees of Clermont County, are subject to the Clermont County Board of Commissioners Policy and Procedural [sic] Manual, and receive their payroll checks from the Clermont County Auditor" (doc. no. 6 at ¶ 4). Plaintiff contends she has sufficiently alleged "specific examples of how Clermont County acted as her employer" (doc. no. 19 at 2).

Even taken as true, the allegations of the amended complaint fall short of stating a plausible claim that the Board was plaintiff's employer for purposes of the ADA, FMLA, or Ohio law. See, e.g., Lavelle v. Wood County, Slip Copy, 2010 WL 2572861 (N.D.Ohio 2010) (rejecting plaintiff's assertion that an economic link between Wood County and plaintiff was sufficient to establish the county as plaintiff's "employer" merely because her paycheck came out of the county treasury).

To determine whether a particular entity is the "employer" of a plaintiff, the

Court of Appeals for the Sixth Circuit has held that a court must look to whether the alleged employer exercises control over the manner and means of plaintiff's work. Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 611-12 (6th Cir. 2003). Plaintiff does not allege that the Board supervised VSC employees' day to day activities, hired or fired VSC employees, controlled VSC work assignments, issued instructions to the VSC, or conducted any other activities commonly performed by employers. By state law, the Board has no authority under Ohio law to do any of these things for VSC employees. See Satterfield v. Tennessee, 295 F.3d 611, 617 (observing that in evaluating the overall relationship, the "most important factor" was "the employer's ability to control job performance and employment opportunities of the aggrieved individual"); Sanford v. Main Street Baptist Church Manor, Inc., 327 Fed.Appx. 587, 594 (6th Cir. 2011) ("[A]ggregation of joint employees for the purposes of establishing the Title VII numerosity requirement is permissible when one joint employer exercises control over the employees of the other joint employer"). Plaintiff has not pleaded factual content that would allow this Court to draw the reasonable inference that the defendant Board could be liable for the misconduct alleged.

The Board asserts that, even assuming that plaintiff's allegations are true for purposes of Rule 12(b)(6), none of her allegations "change the legal status of the Clermont County Board of County Commissioners as a separate employer from Defendant Clermont County Veterans Service Commission."(doc. no. 21 at 1). The Board points out that Ohio statutes set forth the responsibilities and authority of the respective governmental entities, including the VSC. To carry out its duties, a VSC

is authorized to operate and staff a veterans service office. Ohio R.C. §§ 5901.03(A); 5901.06-.07; 5901.11. The Ohio Supreme Court has observed that:

> "The history of R.C. 5901.11 demonstrates that the General Assembly intended veterans service commissions to have authority over their budgets, without discretionary oversight by the boards of county commissioners. . . . veterans service commissions enjoy a unique history and status. They are vested with a special public trust to see that those who have served our country receive a decent burial and are remembered with honor, and that they and their families are kept from indigency."

Lynch v. Gallia Cty. Bd. of Commrs., 79 Ohio St.3d 251, 257 (1997). Ohio law provides that the VSC, not the Board, has the authority to hire, fire, supervise, and pay its own employees. See Ohio R.C. § 5901.03 ("The [VSC's] duties shall include but are not limited to . . . A) Employing such staff as are necessary to carry out the commission's duties, and fixing their compensation; B) Establishing policies and procedures for the administration of the commission and the veterans service office . . ."); Ohio R.C. § 5901.07 ("The [VSC] shall employ the necessary clerks, stenographers, and other personnel to assist the service officers in the performance of duties and shall fix their compensation ").

Under Ohio law, the VSC is a separate governmental entity with its own budget. Lynch, 79 Ohio St.3d at 257-58 (finding that "the General Assembly intended for Veterans Service Commissions to have authority over their budgets, without discretionary oversight by the boards of county commissioners"). The Board has no authority to revise the VSC budget. Id. at 257 ("boards of county commissioners are not permitted to revise lawful veterans service commission budgets"). The U.S.

Census recognizes the VSC as a separate governmental entity. See 29 C.F.R. § 825.108 (indicating that one factor in determining whether entities are separate is "whether they are treated separately for statistical purposes in the Census of Government issued by the Bureau of the Census, U.S. Department of Commerce").

The Board points out that plaintiff rests much of her argument on duties provided by other entities or government employees (doc. no. 21 at 1-2).[6] The Board asserts that "the facts asserted by Plaintiff in support of her belief that she was employed by both the Veterans Service Commission and the Board of County Commissioners demonstrate only a misapprehension of the law" (doc. no. 21 at 2). The fact that various officials (i.e. the HR department, county prosecutor, auditor, a hearing officer from the sheriff's department, OPERS) all fulfilled their respective functions does not mean that those individuals or the county therefore "employed" the plaintiff (doc. no. 21 at 1-2).

Plaintiff argues that the Court must decide the "employer" issue on summary judgment after discovery (doc. no. 19 at 5). On the contrary, research reflects numerous cases where defendants were dismissed on the ground that they were not the plaintiff's employer as a matter of law, and thus could not be liable for employment discrimination or retaliation claims. See, e.g., Lavelle v. Wood County, Slip Copy, 2010 WL 2572861 (N.D.Ohio 2010) (dismissing pursuant to Rule 12(b)(6) because county defendant was not the plaintiff's "employer"); Longstreet v. State of

---

[6] In her response, plaintiff cites the paragraphs from the initial complaint (see doc. no. 19 at 4, citing doc. no. 3). However, that pleadings has been superceded by the Amended Complaint (doc. no. 6).

Ohio, Indus. Commission., 2005 WL 3298883 (N.D.Ohio 2005) (dismissing pursuant to Rule 12(b)(6) because OPERS had no control over plaintiff's job performance and was not plaintiff's employer); Weintraub v. Board of County Commissioners for St. Mary's County, Slip Copy, 2009 WL 2366140 (D.Md. 2009) (dismissing the Board because it was not plaintiff's employer); Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F.Supp. 344, 348 (S.D.N.Y.1984) (observing in ADA case that whether an entity is an "employer" is a question of law and that the "extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor"), affirmed 770 F.2d 157 (1985).

Plaintiff cites an out-of-circuit case, Bristol v. Bd. of Cty. Commissioners, Clear Creek Cty., 312 F.3d 1213 (10th Cir. 2002) (en banc) in support. Such case is not binding here. More importantly, the cited case does not help plaintiff's argument. In Bristol, the plaintiff sued under Title I of the ADA, which requires a covered entity to provide reasonable accommodations to an employee with a disability. 42 U.S.C. § 12112. Bristol claimed that he was an employee of both the Sheriff's office and the Board of County Commissioners. The Court of Appeals for the Tenth Circuit granted *en banc* rehearing to determine "whether the Board can be considered an employer of Bristol so as to trigger the accommodation requirements of the ADA." Bristol, 312 F.3d at 1216 n. 2. The Court discussed the statutory authority of the respective governmental entities, considered the amount of authority and control the alleged employer had over the performance of the employee's work, and concluded that "the Board of County Commissioners has no control over the Sheriff's employees." Id. at

1218–21. The Court determined that the Board was not Bristol's employer as a matter of law, and therefore, the Board had no duty under the ADA to provide reasonable accommodation to Bristol. Id. at 1219. The Court of Appeals explained:

> Employees of the County Sheriff are, of course, "County employees" in the same sense that employees of the federal judiciary are "federal employees." Such common usage has no bearing on our construction of the ADA. The instant case is about whether the Board can be considered an employer of Bristol so as to trigger the accommodation requirements of the ADA.

Id. at 1216 fn.2. The Court of Appeals remanded the case "with instructions to dismiss the action as to the Board." Id. at 1215. The present plaintiff's argument suffers from the same defects as the plaintiff in Bristol.[7]

Both the Board and the plaintiff also cite Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603 (6th Cir. 2003). There, employees of the Michigan Department of Treasury ("Treasury") had alleged employment discrimination and named a variety of governmental entities and officials as defendants. The Treasury possessed the sole authority to appoint, hire, fire and promote eligible employees. The other defendants did not have such control and could not be liable for any alleged adverse employment actions against Treasury employees. The Court of Appeals for the Sixth Circuit held that the Treasury was the entity with the authority to make the relevant

---

[7]Plaintiff attaches some exhibits to her response and indicates that she "can assure the Court that her allegation that the County, as well as CCVSC, acted as her employer is well-founded, and even before discovery is taken, she has numerous other examples of the County functioning as her employer" (doc. no. 19 at 3). Such assurance would not satisfy the requirements of Rule 56(e), and in any event, nothing in the exhibits suggests that the Board had any authority over the manner and means of plaintiff's work at the VSC.

employment decisions and controlled the manner and means of the employees' work, and thus, was the sole employer. Id. at 611-12.

Finally, plaintiff argues that her claim of intentional infliction of emotional distress may be asserted against the Board because such claim is not based on the employer status of either defendant" (doc. no. 19 at 3). The amended complaint reflects otherwise. Plaintiff bases such claim in large part on the allegation that the defendants terminated her for seeking reasonable accommodation and for using FMLA leave. As already discussed, the Board had no authority to terminate plaintiff.

To the extent plaintiff bases (in part) her emotional distress claim against the Board on an alleged "threat of prosecution" by a county prosecutor (see doc. no. 19 at 3), this Court has previously rejected similar claims. See, e.g., Collins v. Allen, 2006 WL 2505928 (S.D.Ohio 2006) (J. Beckwith). In Collins, the Court found that the plaintiff's derivative claims, premised on her allegation that the county prosecutor was an "agent" of the Board of County Commissioners, had no support in the Ohio law governing the office of the county prosecuting attorney. Collin's direct claims against the Board similarly failed, because under Ohio law, the Board had no supervisory authority or control over the elected prosecuting attorney.

## VI. Conclusion

The amended complaint does not plead facts sufficient to show an actual employment relationship between plaintiff and the Board. As a matter of law, the Board did not control the manner and means of plaintiff's work and was not her employer for purposes of the ADA, FMLA, and Ohio law. Even taking all well-pleaded

**nonconclusory allegations as true, the amended complaint fails to state a claim against the Board.**

**Accordingly, the defendant Board's "Motion to Dismiss" (doc. no. 13) pursuant to Rule 12(b)(6) is <u>GRANTED</u>; all claims against the Board are dismissed with prejudice; the Board is hereby dismissed as a party from this action.**

**The plaintiff's claims against the remaining defendant shall proceed according to the Scheduling Order issued on August 30, 2011 (doc. no. 23).**

**IT IS SO ORDERED.**

                                       s/Herman J. Weber
                                   **Herman J. Weber, Senior District Judge**
                                   **United States District Court**