# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KRISTAN D. NELSON, | Case No. 1:11-cv-335 |
| Plaintiff, | Weber, J.<br>Bowman, M.J. |
| v. | |
| CLERMONT COUNTY VETERANS<br>SERVICE COMMISSION, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. Background

Plaintiff Kristan D. Nelson, through counsel, filed a six-count federal complaint against the Clermont County Board of Commissioners and the Veteran's Service Commission in Clermont County, Ohio ("CCVSC"), alleging that her former employer violated the federal Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), and comparable Ohio law.

Plaintiff began working as an administrative assistant for CCVSC, a public agency, in 2002. In 2007, Plaintiff began reporting to Danny Bare as her direct supervisor. In August 2009, Plaintiff learned that her 13-year-old daughter had been raped by unknown assailants in June 2009. (Doc. 6). As a result, Plaintiff alleges that both she and her daughter developed anxiety and depression, and post-traumatic stress disorder. Plaintiff requested and was awarded a period of FMLA leave from September

29, 2009 through November 8, 2009. (Doc. 6, ¶¶8-9). Plaintiff returned to work on November 9, 2009, but began bringing her daughter with her to work. (Doc. 6, ¶11). On November 13, 2009, Mr. Bare advised her that it was not appropriate for her to bring her daughter to work. Plaintiff alleges that Mr. Bare instructed her that she must choose between her job and caring for her daughter by November 18, 2009. (Doc. 6, ¶15). In response, Plaintiff proposed a 35 hour work-week, with no lunch break and with her work-day ending at 2:30 p.m. (Doc. 6, ¶22). Plaintiff alleges that her employer provided no response to her proposal and instead terminated her employment. The stated reason for her termination concerned falsification of payroll records/concealment of overtime.

Shortly after Plaintiff filed her complaint in this Court, the Court dismissed one of the two named Defendants, on grounds that the Clermont County Board of Commissioners was not, as a matter of law, the Plaintiff's employer, and therefore not subject to suit for employment discrimination. (Doc. 25). Later, the Court dismissed Plaintiff's ADA claim (Count One) against the second Defendant, CCVSC. Although CCVSC was Plaintiff's employer, the Court held that CCVSC does not have the requisite number of employees to be a covered employer subject to the ADA. (Doc. 34). The Court additionally dismissed Plaintiff's claim of "disability discrimination" (Count Two) for failure to state a claim, because the amended complaint did not sufficiently allege that Plaintiff sought her employer's accommodation for her own alleged disability, rather than merely to take care of her daughter. (Doc. 34 at 12-14).

Following the Court's dismissal of the Board of Commissioners and Plaintiff's ADA and disability claims, CCVSC moved to dismiss three additional counts of Plaintiff's

First Amended Complaint. In response, Plaintiff moved for leave to file a Second Amended Complaint. Defendant also has moved to dismiss or to strike the proposed Second Amended Complaint. For the reasons set forth below, I recommend that Defendant's motions be granted in part, and denied in part.

**II. Analysis**

**A. Defendant CCVSC's Motion to Dismiss Counts 4, 5 and 6 of Plaintiff's First Amended Complaint**

Defendant CCVSC has moved to dismiss three additional counts of Plaintiff's first amended complaint, on grounds that the Court previously dismissed related claims. (*See* Doc. 36). In response, Plaintiff concedes that a portion of Count Four, all of Count Five, and a portion of Count Six are subject to dismissal based upon the Court's prior rulings. However, Plaintiff argues that a portion of her retaliation claim (Count Four) and of her intentional infliction of emotional distress claim (Count Five) allege sufficient additional facts and/or legal theories to survive Defendant's motion.

**1. FMLA Retaliation (Count Four)**

Noting the previous dismissal of Plaintiff's underlying disability claim, Defendant CCVSC argues that because Plaintiff's allegations fail to describe any conduct that could be considered unlawful under the FMLA concerning *Plaintiff's* disability (rather than her daughter's), any retaliation claim (Count Four) based upon the rejected disability claim also must be dismissed. Indeed, Plaintiff concedes that any claims under the ADA or Ohio discrimination laws (including retaliation claims under Count Four), are subject to immediate dismissal in light of the Court's prior rulings, subject only

to Plaintiff's right to appeal. (Doc. 48 at 2). However, she argues that a portion of her retaliation claim falls under the FMLA, and therefore survives.

By way of background, in Count Three of her First Amended Complaint, entitled "FMLA Violation," Plaintiff alleges that both she and her daughter suffer from post-traumatic stress disorder ("PTSD"), a serious health condition. Plaintiff further alleges that due to Plaintiff's and her daughter's PTSD, and the "ongoing harassment" of Mr. Bare, she requested an extended period of FMLA leave. (Doc. 6 at ¶48). Within ten days of her return to work on November 9, 2009, Count Three alleges that Plaintiff was terminated "because she had taken FMLA leave," in violation of 29 U.S.C. §2915(a). (Doc. 6 at ¶51).[1]

Absent any direct evidence, a claim of FMLA retaliation may be proven through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, in order to state a claim for FMLA retaliation, a plaintiff must demonstrate: (1) she was engaged in activity protected under the FMLA; (2) the employer was aware of her FMLA activity; (3) after learning of the FMLA activity, the employer took an adverse employment action against the FMLA employee; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Although Count Three generally alleges that Plaintiff was fired "because she had taken FMLA leave," in Count Four, Plaintiff sets forth a separate retaliation claim based upon her allegation that she engaged in protected activity "when she sought out

---
[1] Defendant represents that it intends to file an additional motion to dismiss the FMLA claim in the near future.

information regarding filing a grievance against Mr. Bare." (Doc. 6 at ¶53). Centering on her proposed grievance then, Plaintiff asserts that Count Four sets forth a claim distinct from Count Three, by alleging that Plaintiff suffered an adverse employment action when she was terminated "within two (2) days of Mr. Bare discovering that [Plaintiff] intended to file a grievance against him." (Doc. 6 at ¶54). Based upon an earlier allegation that Mr. Bare reacted with "harassment," (Doc. 6 at ¶16), Plaintiff contends that retaliation in reaction to a planned grievance sufficiently alleges a stand-alone claim of FMLA retaliation.

In addition, although not specifically pled in her first amended complaint,[2] Plaintiff argues that her allegations support a theory that she was fired in retaliation for seeking an intermittent or reduced leave schedule under the FMLA. Plaintiff argues that her November 18, 2009 proposal for a modified work schedule that would allow her to leave work by 2:30 p.m. should be viewed as a request for "intermittent leave" or a "reduced leave schedule" under the FMLA. *See* 29 U.S.C. §2612(b); 29 C.F.R. §825.202(a). In the alternative to these FMLA retaliation theories, Plaintiff seeks leave to file a second amended complaint.

In its motion to dismiss, Defendant contends that Plaintiff's allegations fail to state a claim for FMLA retaliation under either of the two theories she proposes. Tackling the latter theory first, Defendant argues that Plaintiff's modified work schedule proposal does not, as a matter of law, constitute a request for intermittent leave or a reduced leave schedule under the FMLA, because Plaintiff sought to change her work-day hours so that she would not be required to take *any* leave at all. Arguably, denial of

---

[2] Plaintiff includes additional allegations relating to this theory in her proposed second amended complaint.

a modified work schedule that would require an employer to open its doors during non-business hours, in order to permit an employee the opportunity to avoid taking any leave at all, does not violate the FMLA.³ If Plaintiff's request for modified hours did not fall under the FMLA, then Defendant did not violate the FMLA or "retaliate" against her by denying that request. For similar reasons, Defendant argues that its denial of the modified work schedule cannot be considered to be an adverse employment action.

With respect to an FMLA retaliation claim focused on the grievance, Defendant reasons that the planned grievance was not "protected activity" under the FMLA, because the grievance did not specifically concern FMLA activity. Assuming that the grievance did not relate to protected FMLA activity, Defendant argues that any actions Mr. Bare took would not be sufficient to state an FMLA retaliation claim.

While it is debatable whether Plaintiff's first amended complaint (as opposed to her proposed second amended complaint) sufficiently sets forth her "intermittent leave" FMLA retaliation theory,⁴ I decline to recommend dismissal of Plaintiff's FMLA retaliation claim based upon Defendant's arguments. The record concerning whether Plaintiff's proposed 35-hour work week could be construed as a request for intermittent FMLA leave is not yet sufficiently developed to make a factual determination. Likewise, the

---

³ Defendant's reliance upon *Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) is misplaced. There, the Sixth Circuit held that - despite ADA regulations suggesting that a modified work schedule may be required as a reasonable accommodation in some circumstances - an employer's denial of a request for a modified work schedule *to shorten the employee's commute* was not required under the ADA. *Regan* is not particularly relevant with respect to Plaintiff's FMLA retaliation claim. *See generally, Murray v. AT&T Mobility, LLC,* 374 Fed. Appx. 667 (7th Cir. 2010)(discussing interplay of regulatory frameworks, and holding that employer could count shortened work week, put into place as reasonable ADA accommodation, against employee's FMLA balance).

⁴ Contrary to Defendant's suggestion that Plaintiff relies on the denial of the modified work schedule to satisfy the "adverse employment action" element of her retaliation claim, her first amended complaint refers to her termination as the adverse employment action at issue.

record is inadequately developed on the issue of whether the grievance was in any way related to Plaintiff's FMLA rights. Plaintiff contends that the grievance did relate to her FMLA protected leave, and that Mr. Bare's alleged "harassment" of her occurred both prior to and after the time that she took such leave. Defendant may be able to renew its fact-based argument on summary judgment after further development of the record, but I decline to recommend dismissal of the FMLA retaliation claim at this juncture.

### 2. Unlawful State Law Retaliation (Count Five)

Count Five alleges that Defendant retaliated against Plaintiff in violation of Ohio law. Because the Court previously held that Plaintiff failed to state a disability discrimination claim under state law, Plaintiff concedes that this claim must be dismissed from her first amended Complaint under the Court's prior rulings. As discussed below, Plaintiff attempts to resurrect the claim through the filing of a second amended complaint.

### 3. Intentional Infliction of Emotional Distress (Count Six)

In Count Six, Plaintiff's First Amended Complaint alleges that "Defendants terminated Ms. Nelson's employment because she sought a reasonable accommodation and leave to take care of her daughter and then threatened her with criminal prosecution." (Doc. 6, ¶59). Plaintiff describes Defendant's conduct as "extreme and outrageous." (*Id*. at 60.).

To the extent that Plaintiff's claim for intentional infliction of emotional distress ("IIED") arises out of the same disability discrimination claim that was previously dismissed, Defendant argues that her emotional distress claim must fail as well. As with part of Count Four and all of Count Five, Plaintiff concedes that "because the Court has

7

previously dismissed her disability discrimination claims, she is presently unable to base her emotional distress claim (Count Six) on an underlying disability claim." (Doc. 48 at 9).

Also like Count Four, however, Plaintiff argues that a portion of Count Six survives. Specifically, Plaintiff rests her IIED claim upon the allegations that she was wrongfully terminated for seeking FMLA leave to care for her daughter. For the reasons previously discussed in regard to Plaintiff's FMLA retaliation claim, I recommend that Defendant's motion to dismiss this limited remaining portion of Count Six be denied at this point, without prejudice to Defendant's right to renew its arguments following further development of the record.

By contrast, I recommend granting Defendant's motion to the extent that Defendant seeks dismissal of the portion of any claim relating to conduct by the Clermont County Prosecutor's Office, a non-party to this action. Plaintiff alleges that the prosecutor threatened her with criminal prosecution concerning her use of overtime. (Doc. 6 at ¶¶27, 30). However, CCVSC cannot be held liable for actions taken by the prosecutor regarding potential criminal matters.

In her response to Defendant's motion, Plaintiff points out that the allegations involve conduct by Elizabeth Mason, who acted not only on behalf of the prosecutor's office, but remains counsel of record for CCVSC in this civil proceeding. Even though Plaintiff does not allege that threats of criminal prosecution were actually instigated by CCVSC, Plaintiff argues that the alleged threats of criminal prosecution can reasonably be "imputed" to Ms. Mason's civil client, CCVSC.

8

I disagree. Plaintiff's claim, if any, lies against Ms. Mason.[5] CCVSC cannot be held liable for intentional infliction of emotional distress under Ohio law, based upon a prosecutor's decision-making process in choosing to pursue or abandon a criminal prosecution. *See also* Doc. 25 at 14 (noting that this Court has previously rejected similar claims, citing *Collins v. Allen*, 2006 WL 2505928 (S.D. Ohio 2006)(J. Beckwith)).

**B. Plaintiff's Motion for Leave to File a Second Amended Complaint**

**Defendant's Motion to Dismiss or to Strike Plaintiff's Motion for Leave**

Two days after filing her response in opposition to Defendant's motion to dismiss the previously dismissed claims from her first amended complaint, Plaintiff moved for leave to file a second amended complaint. (Doc. 51). In response, Defendant CCVSC has moved to dismiss and/or to strike the proposed second amended complaint. (Doc. 58). Defendant argues that the proposed second amended complaint improperly interferes with this Court's prior holdings.

Plaintiff argues that she should be permitted to amend her complaint a second time in order to cure any perceived factual deficiencies with respect to Counts Two through Six. Plaintiff contends that there is no prejudice to CCVSC, given the focus of discovery to date and the recent extension of the discovery deadline.

**1. The Court's Prior Rulings**

Plaintiff's tendered second amended complaint re-asserts claims previously dismissed by this Court. For example, the tendered complaint again names the Clermont County Board of Commissioners, the Defendant previously dismissed on March 15, 2012. The tendered complaint additionally re-asserts ADA claims that were

---
[5] Given absolute prosecutorial immunity and other defenses, it is likely that any such claim could not itself withstand a motion to dismiss.

previously dismissed because Plaintiff's employer, CCVSC, does not have a sufficient number of employees to be a covered employer under the ADA.

In response to Defendant's motion, Plaintiff states that she "will agree to an order....dismissing the County as a defendant and the ADA claims for lack of numerosity." (Doc. 51 at 4). Given that concession, it is not entirely clear what Plaintiff seeks to gain by re-asserting the claims. Citing an unpublished district court case from New York, Plaintiff explains that she is re-stating the dismissed claims only "to preserve her rights on appeal." (Doc. 63 at 3). However, even the case cited by Plaintiff reflects that it is not necessary to re-assert previously dismissed claims in order to preserve appeal rights. On the record presented, and based upon Sixth Circuit case law and the practice of the Southern District of Ohio, I recommend that the Court deny the proposed amendment as tendered.[6]

Aside from her desire to re-assert dismissed claims for purposes of "appeal," Plaintiff argues that the primary purpose of the amendment is to re-assert the previously dismissed Count Two, for state disability discrimination, by adding factual allegations sufficient to "nudge her state law disability discrimination across the line of being plausible," under the "plausibility" standard applied by this Court in dismissing the claim from her first amended complaint. (Doc. 34). *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). In addition, Plaintiff seeks to add factual allegations to more clearly articulate her claims for FMLA retaliation, for retaliation under Ohio law, and for

---

[6] The memoranda of both parties contain argument and discussion concerning whether Plaintiff is required to move to alter or amend the Court's prior rulings, before re-asserting the previously dismissed claims. The Court finds it unnecessary to address this argument, instead concluding that the re-assertion of the claims at this stage is procedurally improper under any mechanism.

intentional infliction of emotional distress, discussed above as Counts Four, Five and Six.

In a reply memorandum, Defendant urges this Court to deny and/or strike the entire proposed amendment as futile. Defendant notes that certain claims and the Clermont County Board of Commissioners were previously dismissed by this Court solely on legal grounds, which cannot be overcome by the addition of new factual allegations. Moreover, Defendant argues that the additional factual allegations concerning Counts Two through Six remain insufficient to state a plausible claim as a matter of law.

**2. New Allegations to Support Counts Two through Six**

Count Two of Plaintiff's first amended complaint contained little more than a conclusory allegation that the Defendant "discriminated against Ms. Nelson because of her disability." (Doc. 6, ¶43). Construing the claim in tandem with Plaintiff's ADA "failure to accommodate" claim (Count One), this Court dismissed the related state law claim because Plaintiff failed to allege that she sought a modified work schedule to accommodate her own disability, rather than merely for the care of her daughter. (Doc. 34 at 12).

Plaintiff's tendered second amended complaint contains a number of factual allegations that attempt to overcome the Court's prior determination. First, Plaintiff alleges that, after she learned that her daughter had been sexually assaulted, Plaintiff herself was diagnosed with PTSD. (Doc. 51-1 at ¶8). She alleges that her "own medical condition was exacerbated by the harassment she was receiving from Mr. Bare due to the leave she was taking to care for her daughter." (*Id*. at ¶9.). She alleges that

the extended FMLA leave she took from September 29 through November 8, 2009 was "to cope with her own serious health condition, which was aggravated by Mr. Bare's harassment," as well as to care for her daughter's condition. (*Id*.). She alleges that having her daughter accompany her to work relieved or reduced "the stress that caused [Plaintiff's] own medical condition to flare up periodically, rendering her incapable of work." (*Id*. at ¶11). Plaintiff bolsters her "failure to accommodate" claim with the allegation that her request for a "reduced leave schedule would have...accommodated her *own* disability." (*Id.* at ¶23, emphasis added). She adds that "allowing Ms. Nelson to care for her daughter either by bringing her to work or leaving work early would have alleviated Ms. Nelson's own condition, preventing or at least significantly reducing the likelihood of flare-ups that rendered her incapable of work." (*Id*.). Finally, Plaintiff specifically alleges under Count Two of the tendered second amended complaint that her "disability and requested accommodation for her own disability motivated the decision to terminate her." (*Id.* at ¶43).

Notwithstanding these additional allegations, Defendant points out that the second amended complaint still fails to allege that Plaintiff made CCVSC aware of her own alleged PTSD in a timely manner, or that she requested any specific and objectively reasonable accommodation for her own disability, as opposed to accommodation only for her daughter's illness. Therefore, Defendant argues that even with the additional factual allegations in the second amended complaint, Count Two continues to fail to state a claim for disability discrimination under state law because Plaintiff fails to allege that she made Defendant aware that she herself had a disability, upon which a specific request for reasonable accommodation was based. For the same

reasons, Defendant argues that Plaintiff should not be permitted to add, in her tendered second amended complaint, a derivative state law claim for retaliation. In short, both for the reasons Defendant seeks dismissal of Counts Four, Five and Six of Plaintiff's *first* amended complaint, and because Defendant contends that the factual allegations in the tendered second amended fail to cure legal deficiencies, Defendant asks this Court to deny Plaintiff's motion for leave to further amend her complaint.

The Court agrees that the proposed second amendment, as written, is subject to dismissal as a matter of law - but only to the extent that Plaintiff attempts to re-assert claims against the Clermont County Board of Commissioners, or an ADA claim. The Court's prior dismissal of Plaintiff's state law disability claim rested in large part upon Plaintiff's failure to allege that she sought any accommodation for her own PTSD. (Doc. 34 at 12). Plaintiff has attempted to remedy this facial deficiency in her tendered second amended complaint. While the issue remains close,[7] under the "notice pleading" standards of Rule 8, I find that Count Two in Plaintiff's tendered second amended complaint is sufficient to pass the *Iqbal* standard of review. In other words, viewing the new allegations as a whole, Plaintiff has sufficiently articulated her claim under Count Two, even without inclusion of specific details concerning the circumstances through which she notified Defendant both of her own PTSD, and that she sought "accommodation" for her own PTSD rather than merely to care for her daughter. To the extent that she has cured the facial deficiencies of her state law

---

[7] In the Court's opinion of June 6, 2012, the presiding district judge dismissed Plaintiff's state law disability claim even though Plaintiff had argued that an accommodation for the purpose of taking care of her daughter would alleviate Plaintiff's "own stress and PTSD flare-ups," (Doc. 34 at 14). The Court noted that no authority supports an associational theory of disability. Despite some shortcomings, Plaintiff's tendered second amended complaint more clearly sets forth a claim relating to her own disability.

disability claim in Count Two of the tendered second amended complaint, she also may pursue a derivative retaliation claim (Count Five) under state law. Similarly, she should be permitted to add the proposed factual allegations in order to further support the non-dismissed (FMLA) portions of Count Four (retaliation) and Count Six.

### III. Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1. Defendant's second motion to dismiss portions of Plaintiff's first amended complaint for failure to state a claim (Doc. 36) should be **GRANTED in part**, to the extent that all of Count Five (state law retaliation) and portions of Counts Four and Six should be dismissed from Plaintiff's first amended complaint. However, Plaintiff's claim of FMLA retaliation and of intentional infliction of emotional distress, based upon the same alleged retaliatory conduct under the FMLA, should not yet be dismissed, pending further development of the record;

2. Plaintiff's motion for leave to file a second amended complaint (Doc. 51) should be **GRANTED in part**, to the extent that Plaintiff should be permitted to file a second amended complaint within thirty (30) days, consistent with this Report and Recommendation, that does not re-assert claims against the Clermont County Board of Commissioners or renew Plaintiff's ADA claim;

3. Defendant's motion to dismiss Plaintiff's motion for leave to file a second amended complaint (Doc. 58) is likewise **GRANTED in part**, to the extent that Plaintiff should not be permitted to re-assert claims previously dismissed exclusively on legal grounds;

4. Except as specifically granted in part herein, the motions of both parties (Docs. 36, 51, and 58) should be denied.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KRISTAN D. NELSON,                      Case No. 1:11-cv-335

    Plaintiff,                             Weber, J.
                                          Bowman, M.J.

    v.

CLERMONT COUNTY VETERANS'
SERVICE COMMISSION, et al.,

    Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).